UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EMANUEL L. WILLIAMS,

    Plaintiff,

        v.                          CAUSE NO. 3:25-CV-848-CCB-SJF

RON NEAL, BLAKE FLEMING, PAM
BANE, DAWN BUSS, MEDICAL
DEPARTMENT, JON DOE, JON DOE,
WARDEN,

    Defendants.

## OPINION AND ORDER

Emanuel L. Williams, a prisoner without a lawyer, filed a complaint which the court must screen pursuant to 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Williams is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he alleges facts that preclude relief. *See, e.g., Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Williams alleges that when he arrived at the Indiana State Prison (ISP) on June 12, 2024, he wasn't seen by anyone in medical nor "given a[n] orientation or a packet to know the Policies and Procedure of the facility or IDOC." ECF 2 at 3. He was initially placed in a cell without a light, where he remained for over a week. He was then placed in a different cell in administrative segregation and was told the classification was "because of documented history of behavior that impacts safety and security in the general population." *Id*. at 4. Williams claims it was his first time in IDOC custody, so he didn't have a history of bad behavior at ISP. He wrote grievances about the matter, but it took three months to receive a response. On October 11, 2024, a counselor finally brought him an orientation packet to sign.

Williams believes his placement in segregation from June 12, 2024, to October 11, 2024, violated his constitutional rights. He points to the week spent in the initial cell without a light, and he further describes the conditions as having no TV or "any form of communication" with his family because he "did not know about making a phone list or how the [sic] to use the phone." *Id*. at 5. He also claims he wasn't able to get a job "to help me get income for hygiene and food" or receive drug treatment while on administrative segregation. *Id*. at 7. Williams has sued Warden Ron Neal, Deputy Warden Dawn Buss, Counselor Blake Fleming, Unit Team Manager Pam Bane, Medical Department ISP, Counselor Jon Doe, and Classification Officer Jon Doe. He seeks $1,000,000 in punitive damages.[1]

---

[1] He also seeks "injunctive relief" but doesn't say what kind or explain why injunctive relief would be appropriate in this case. ECF 2 at 9. Williams has attached thirty-three pages of exhibits to his

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id.*

Similarly, while inmates don't generally have a liberty interest in "avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005), the same analysis applies with regard to duration and the harshness of the conditions. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional

---

complaint which explain he received four conduct reports while at the Reception Diagnostic Center (RDC) that are affecting his current classification and out-date. *See generally* ECF 2-1. He believes these conduct reports were unfair, and he seeks to have the disciplinary convictions overturned so he can be released. To the extent Williams is attempting to challenge the findings of his disciplinary proceedings, he can't do so in this 42 U.S.C. § 1983 case. *See* 28 U.S.C. § 2254; *Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973); *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (plaintiff can't seek damages in civil rights case unless the guilty finding is overturned, vacated, or otherwise drawn into question); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (*Heck* applies to prison disciplinary convictions).

3

right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion*, 559 F.3d at 697-98 & nn.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists). Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).[2]

---

[2] Of note, "for any term of solitary confinement lasting more than days but less than years, qualified immunity will often apply to claims for damages. For segregation terms measured in months, even if an inmate's segregation amounted to a deprivation of a liberty interest, it is unlikely that prison officials could be held responsible for incorrectly guessing otherwise due to the ambiguity of the parameters of the law." *Jackson*, 150 F.4th at 858–59 (internal citation and quotation marks omitted). However, because qualified immunity is an affirmative defense, this question is best left to a later stage of the litigation.

Here, Williams claims his rights were violated because he was placed in administrative segregation once he arrived at ISP. However, he must show both the length in segregation *and* the conditions violated the Constitution before any process was due. Williams alleges he was held in administrative segregation for approximately four months. This length of time may trigger due process considerations, but only if the conditions are atypical. *See Jackson*, 150 F.4th at 859–60 (discussing duration and collecting cases suggesting that "solitary confinement of up to one year, standing alone, is not sufficient to implicate a liberty interest"). Williams' description of his stay in administrative segregation—that he had no TV, no outside communication because he didn't know how to use the phone, no job, and no drug program—falls far short of suggesting the conditions were atypical. He does allege he was held in a cell without a light for a week, but he admits the placement in that cell was only temporary. Moreover, he doesn't claim the cell was without any openings or that he was subjected to pure darkness during all hours of the day and night. "When considering a prisoner's liberty interest in avoiding conditions of segregation, we have distinguished between allegations of 'disgusting conditions' versus conditions that 'although restrictive, were not unsanitary or otherwise disgusting.'" *Id*. at 860 (quoting *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015)). Therefore, the Fourteenth Amendment due process claims will be dismissed.

Williams also asserts his Eighth Amendment rights were violated. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir.

5

2008) (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

As noted above, Williams claims he had no TV, no outside communication because he didn't know how to use the phone, no job, and no drug program while he

6

was housed in segregation. He also alleges he was initially placed in a cell for a week that didn't have a working light, but he doesn't suggest he was subjected to total darkness during that time. These allegations are insufficient to suggest he was denied the minimal civilized measure of life's necessities, so he hasn't stated an Eighth Amendment claim either. *See generally Thomas*, 2 F.4th at 719–22 (describing the types of conditions that arise to the level of a violation); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face).

More generally, Williams doesn't tie any of his allegations to a specific defendant such that they would be subject to individual liability. He doesn't allege they participated in or were aware of yet turned a blind eye to his specific issues. In fact, he doesn't name any of the defendants in the body of his complaint. Overseeing prison operations and being copied on grievances isn't sufficient to state a claim. *See Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he division of labor is critical to the efficient functioning of the [prison] organization."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.); *see also Adams v. Reagle*, 91 F.4th 880, 894–95 (7th Cir. 2024) (finding that the officers responsible for the decision to place plaintiff in department-wide restrictive housing didn't violate the Eighth Amendment because

they didn't create the conditions, make them worse, or have responsibility or the authority to change them).[3]

Williams further claims his complaint and/or grievances were mishandled and that he didn't receive the proper orientation and paperwork when he arrived at ISP. However, Williams has no constitutional right to either, so these allegations don't state a claim. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)).

This complaint does not state a claim for which relief can be granted. If Williams believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a

---

[3] In his attachments, Williams repeatedly states his placement in segregation was due to "retaliation from SGT. Ashley Tucker and SGT. Fundersol at RDC" related to his prior conduct reports/disciplinary convictions. ECF 2-1 at 25. However, he doesn't explain how the defendants played a part in any sort of retaliatory conduct. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (describing prima facie case of retaliation).

**Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Williams has filed two additional documents tiled "EMERGENCY," which the court will construe as motions for preliminary injunctive relief. ECF 11 & ECF 12. In them, he states he is in "danger" because his cell was shaken down in late November of 2025. ECF 11 at 1. He received an allegedly "false" conduct report the same day he was given copies of documents from the court in this case, which resulted in a sanction of the loss of 90-days earned credit time. *Id*. He claims he was targeted, that his hearing was unfair, and that he would have already been released from prison without the additional sanction. He received another conduct report on December 4, 2025, for allegedly placing plastic material over the bars of his cell and obstructing visibility.[4] He was found guilty and again asserts he was "not given a fair hearing." ECF 12 at 1.

A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v.*

---

[4] None of the officers mentioned in the emergency motions or conduct reports are defendants in this case.

*CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792. The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Id.* at 791.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the

federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

Here, Williams has no chance of success on the merits of an injunctive relief claim because—as described in detail above—his complaint fails to state any claims. Moreover, as explained in footnote one, to the extent Williams is attempting to challenge the findings of the disciplinary convictions that are allegedly affecting his release date, he may not do so in this civil rights lawsuit. Such a challenge is the sole province of habeas corpus. *See* 28 U.S.C. § 2254; *Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973); *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (plaintiff can't seek damages in civil rights case unless the guilty finding is overturned, vacated, or otherwise drawn into question); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (*Heck* applies to prison disciplinary convictions). Therefore, his "EMERGENCY" requests will be denied.

As a final note, if Williams is seeking relief from the court in the future, he must file proper motions rather than letters. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). A motion needs to include a caption like the one at the top of this order which includes the parties, the case number, and the title. For example, the title of a motion seeking to extend a deadline would be, "Motion for Extension of Time."

For these reasons, the court:

(1) **DENIES** the emergency motions for preliminary injunctive relief (ECF 11 & ECF 12);

(2) **GRANTS** Emanuel L. Williams until **February 12, 2026**, to file an amended complaint; and

(2) **CAUTIONS** Emanuel L. Williams if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on January 8, 2026

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT